IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| AMERISOURCEBERGEN DRUG CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>PRESTIGE SPECIALTY PHARMACY LLC, LUXOR PHARMACY, INC., WELLCARE PHARMACY, AMRO SHARAFELDIN, and PAUL CYPRUS,<br><br>    Defendants. | Case No.<br><br>Hon. |

## COMPLAINT

Plaintiff AmerisourceBergen Drug Corporation ("Amerisource"), through its attorneys, states the following for its Complaint:

### Parties and Jurisdiction

1. Plaintiff Amerisource is a Delaware corporation with a place of business located at 1 West First Avenue, Conshohocken, Pennsylvania 19428.

2. Defendant Prestige Specialty Pharmacy LLC is or was a Michigan limited liability company with a principal place of business located at 3739 15 Mile Road, Sterling Heights, Michigan 48310.

3. Effective as of October 6, 2023, Prestige Specialty Pharmacy, LLC – MI Identification No. 802091864 ("Prestige 1") was administratively dissolved. On October 10, 2023, Prestige Specialty Pharmacy, LLC – MI Identification No. 803111810 ("Prestige 2" and, together with Prestige 1, "Prestige") was formed.

4. Defendant Luxor Pharmacy, Inc. ("Luxor") is a Michigan corporation with a principal place of business located at 3739 15 Mile Road, Sterling Heights, Michigan 48310.

5. Defendant Wellcare Pharmacy ("Wellcare") is a Michigan limited liability company with a principal place of business located at 2222 North Beech Daly Road, Suite 10, Dearborn Heights, Michigan 48127.

6. Defendant Amro Sharafeldin ("Sharafeldin") is a competent adult individual residing at 6593 Pine Way Drive, Troy, Michigan 48098.

7. Defendant Paul Cyprus ("Cyprus") is a competent adult individual residing at 14676 Berwick Street, Livonia, Michigan 48154.

8. The events giving rise to this action concern pharmaceutical products shipped to Prestige and others in Macomb County, Michigan.

9. Jurisdiction is proper in this Court because this lawsuit involves a dispute among business enterprises and arises out of the parties' contractual arrangements and business dealings, and in which the amount in controversy exceeds $25,000.00, exclusive of interest, costs, and attorneys' fees. MCL § 600.8301; MCL § 600.8035(3).

10. Venue is proper in this Court because Prestige and Luxor are located in Marine City, Michigan.  MCL §600.1621(a).

**GENERAL ALLEGATIONS**

11. Plaintiff hereby incorporates all of the previous allegations as though fully set forth herein.

12. Amerisource supplies medical and pharmaceutical products to pharmacies, among others.

13. Prestige provides pharmacy services to customers in and around Sterling Heights.

14. On January 3, 2023, Prestige 1 executed a Credit Application and Agreement (the "First Agreement") to purchase pharmaceutical products (the "Products") from Amerisource on open account. A true and correct copy of the First Agreement is attached hereto as **Exhibit A**.

15. The First Agreement was signed by Sharafeldin, who identified himself as the sole member of Prestige 1.

16. By executing the First Agreement, Prestige 1 agreed to Amerisource's terms of sale which govern Prestige 1's purchase of Products from Amerisource. **Exhibit A**.

17. In the First Agreement, Prestige 1 agreed to pay for all Products purchased from Amerisource as and when due under their respective invoices. **Exhibit A** at § 1.

18. Prestige 1 also agreed to the assessment of a "per-day late payment fee of the lower of 18% per annum or the maximum rate permitted by law on the outstanding balances until paid . . .." **Exhibit A** at § 1.

19. To secure Prestige 1's payment obligations, Prestige 1 granted Amerisource a security interest and lien in all of Prestige 1's accounts, inventory, equipment, and general intangible property and proceeds therefrom. **Exhibit A** at § 2.

20. Amerisource's security interest was properly perfected by the filing on June 6, 2018 of a UCC-1 Financing Statement, filing No. 20180606001276-9, showing H.D. Smith as the Secured Party, which was thereafter amended to change the Secured Party to Amerisource Bergen Drug Corporation [Plaintiff] on April 19, 2019, filing No. 20190419000883-1, and the filing of a continuation statement on March 30, 2023, Filing No. 20200330000058-0 (collectively, the "Financing Statement"). A true and correct copy of the Financing Statement is attached hereto as **Exhibit B**.

21. All goods transferred by Prestige 1 remain subject to Amerisource's security interest.

22. Prestige 1 also agreed to give Amerisource at least 10 days prior written notice of "any change in its state of formation, the location or ownership of, or any intent to sell, close or materially modify its business operations . . . ." **Exhibit A** at § 3.

23. An event of default occurs under the First Agreement if, among other reasons, Prestige 1 fails to make payments as and when due under the First Agreement and invoices, and if Prestige 1 fails to comply with any covenant set forth in the First Agreement. **Exhibit A** at §§ 4(a), (b).

24. In the First Agreement, Prestige 1 agreed to pay all reasonable attorneys' fees and costs incurred by Amerisource to enforce the First Agreement. **Exhibit A** at § 6.

25. The parties also agreed that the First Agreement is governed by Delaware law. **Exhibit A** at § 12.

26. In reliance on the First Agreement and orders for Products placed by Prestige, Amerisource shipped Products to Prestige on open account.

27. Amerisource would send Prestige 1 invoices corresponding to the Products shipped (collectively, the "Invoices").

28. In or about July of 2023, Sharafeldin informed Amerisource that (i) Sharefeldin transferred ownership of Prestige 1 to Cyprus, (ii) Sharafeldin would cause Prestige 1 to pay its entire account balance with Amerisource under the First Agreement, and (iii) under a separate agreement between Sharafeldin' and Cyprus, all amounts due and owing Amerisource under the First Agreement would be paid by Prestige 1 and Cyprus. A true and correct copy of the Affidavit of Cyprus is attached hereto as **Exhibit C.**

29. Sharafeldin, without authority and without Plaintiff's consent, filed a UCC Financing Statement Amendment terminating the Financing Statement. A true and correct copy of the UCC-3 Termination Statement filed by Sharafeldin is attached hereto as **Exhibit D**.

30. Contrary to Sharafeldin's representations, Prestige 1 did not pay its entire account balance with Amerisource under the First Agreement, as $38,272.85 remains due and owing under the First Agreement as of July 25, 2024.

31. Relying on these representations, on August 15, 2023, Cyprus, on behalf of Prestige 1, executed an Express Credit Application (the "Second Agreement" and, together with the First Agreement, the "Agreements") to purchase additional Products from Amerisource. A true and correct copy of the Second Agreement is attached hereto as **Exhibit E**.

32. In the Second Agreement, Prestige 1 agreed to satisfy all invoices issued by Amerisource for Products shipped within ten days. **Exhibit E** at p.2.

33. As with the First Agreement, Prestige 1 again agreed to the assessment of a late payment fee on all outstanding invoices in the amount of 18% per annum or the maximum rate permitted by law — whichever is lower. **Exhibit E**.

34. On October 6, 2023, Prestige 1 was administratively dissolved pursuant to Articles of Dissolution.

35. On October 12, 2023, Cyprus formed Prestige 2.

36. After forming Prestige 2, Prestige continued to order Products from Amerisource under the Second Agreement, running up an account balance in excess of $274,000.

37. Despite ordering Products from Amerisource and using them for its business, Prestige defaulted on its obligations under the Agreements by failing to pay for the Products as and when due under the terms of the Agreements and Invoices. Attached as **Exhibit F** are aged

invoice reports which summarizes the outstanding invoices under the First Agreement and Second Agreement.

38. On or about December 20, 2023, Amerisource placed a telephone call to Sharafeldin to inquire about the outstanding balance due and owing under the Agreements.

39. During this telephone conversation, Sharafeldin represented to Amerisource that Cyprus and Prestige—not Sharafeldin—were responsible for satisfying all balances due and owing Amerisource under *both* Agreements.

40. In reliance on this representation, among other things, Amerisource has made multiple attempts to contact Prestige and Cyprus, without success.

41. For example, telephone calls placed to Prestige are automatically forwarded to Wellcare, which holds itself out as a separate and distinct pharmacy.

42. Upon information and belief, Wellcare is either (i) a successor-in-interest to Prestige, (ii) an alter ego and/or instrumentality of Prestige, or (iii) otherwise received assets, including but not limited to, the prescription files of Prestige.

43. In addition, Defendant Luxor—which also holds itself out as a separate and distinct pharmacy— shares the same address as Prestige.

44. Upon information and belief, Luxor is either (i) a successor-in-interest to Prestige, (ii) an alter ego and/or instrumentality of Prestige, or (iii) otherwise received assets, including but not limited to, the prescription files of Prestige.

45. Luxor and Prestige have a common owner — Cyprus.

46. Amerisource has fulfilled all conditions precedent to filing this action.

## COUNT I – BREACH OF CONTRACT
### (Amerisource vs. Prestige)

47. Plaintiff hereby incorporates all of the previous allegations as though fully set forth herein.

48. The Agreements constitute valid contracts between Amerisource and Prestige.

49. Prestige is in default of its obligations to Amerisource under the Agreements, specifically, Prestige's obligations to satisfy all Invoices as and when due under the Agreements and Invoices.

50. Despite Amerisource's demand, Prestige has failed and refused to satisfy the Invoices due and owing under the Agreements.

51. Luxor and Wellcare are jointly and severally liable with the remaining Defendants under equitable principles of piercing the corporate veil, as discussed in further detail below.

52. As of July 25, 2024, Prestige owes Amerisource $312,661.40 under the Agreements, plus attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation respectfully requests judgment in its favor and against Amro Sharafeldin, Paul Cyprus, Prestige Specialty Pharmacy LLC, Luxor Pharmacy, Inc., and Wellcare Pharmacy, jointly and severally, in the amount of $312,661.40, plus punitive damages, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

## COUNT II – ACCOUNT STATED
### (Amerisource v. Prestige)

53. Amerisource hereby incorporates all of the previous allegations as though fully set forth herein.

54. Amerisource has sold to and provided Prestige with Products upon open account as set forth and summarized in the aged invoice reports (**Exhibit F**), and as more particularly set forth in the invoices, attached in support hereof as collective **Exhibit G**.

55. Prestige never objected to any of the Invoices, which constitute statements of account.

56. Amerisource has made demand on Prestige to pay its indebtedness of the account stated, but Prestige has failed, refused and otherwise neglected to pay the indebtedness in full.

57. There is now unpaid on such account (as of July 25, 2024) the sum of $312,661.40 plus interest, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

58. The Affidavit of Angela Rodenbeck, Senior Accounts Receivable Manager of Cencora, an affiliate of Amerisource, regarding proof of the account stated pursuant to MCL §600.2145 is attached hereto and incorporated by reference as **Exhibit H**.

59. The account has been stated and Amerisource has suffered damages in the amount of $312,661.40 plus interest, costs and attorney fees.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation respectfully requests judgment in its favor and against Prestige Specialty Pharmacy LLC in the amount of $312,661.40, plus interest, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

### COUNT III—QUANTUM MERUIT
### (Amerisource v. Prestige, Luxor and Wellcare)

59. Amerisource hereby incorporates all of the previous allegations as though fully set forth herein.

60. Pursuant to the Agreements, Prestige purchased and received Products, all of which have been delivered.

61. Upon information and belief, the recipients of the Products included Prestige, Luxor and Wellcare.

62. The value of the Products delivered and purchased, but unpaid, is $273,072.71. The aged invoice report evidencing same is attached as **Exhibit F**.

63. Prestige, Luxor and Wellcare each received a benefit from Amerisource through the receipt and use of the Products. Upon information and belief, Prestige, Luxor and Wellcare have sold all of the Products and received a benefit from doing same.

64. Prestige, Luxor and Wellcare have failed and refused to pay such indebtedness.

65. The balance due and owing on for all Products received, but not paid for, is $273,072.71, exclusive of interest, costs, attorneys' fees and late fees.

66. It would be unjust and inequitable for Prestige, Luxor and Wellcare to be allowed to retain the benefits they have received without paying Amerisource for these Products.

67. Injustice can only be avoided if Prestige, Luxor and Wellcare, jointly and severally, are required to compensate Amerisource for the value of the Products in the amount of $273,072.71.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation respectfully requests judgment in its favor and against Prestige Specialty Pharmacy LLC, Luxor Pharmacy, Inc., and Wellcare Pharmacy, jointly and severally, in the amount of $273,072.71.

### COUNT IV – UNJUST ENRICHMENT (*In the Alternative*)
### (Amerisource v. Prestige)

68. Amerisource hereby incorporates the previous allegations as if fully set forth herein (except for those paragraphs which expressly affirm the existence of contractual agreements).

Amerisource conferred benefits on Prestige when it supplied Products to Prestige, as requested.

69. Prestige knew of, received, appreciated, and retained the Products and benefits derived therefrom but failed to pay for them.

70. Under the circumstances described herein, it would be unjust for Prestige to retain the Products and their benefits without paying for them in full.

71. By accepting delivery of the Products supplied by Amerisource, retaining them, and not paying Amerisource for them in full, Prestige has been unjustly enriched at Amerisource's expense, as set forth herein.

72. To the extent Amerisource does not have any legal remedy under applicable law, Prestige must make restitution to Amerisource.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation respectfully requests judgment in its favor and against Prestige Specialty Pharmacy LLC in the amount of $273,072.71.

### COUNT V – SUCCESSOR LIABILITY/DE FACTO MERGER/ALTER EGO OR CONSOLIDATION
**(Amerisource v. Prestige 1, Prestige 2, Wellcare, and Luxor)**

73. Amerisource hereby incorporates all of the previous allegations as though fully set forth herein.

74. Upon information and belief, Prestige 2, Wellcare and Luxor conduct the same pharmaceutical business at the same location that Prestige 1 conducted before it ceased operations.

75. Prestige 2 and Luxor have the same ownership and substantially the same operations.

76. Prestige 2 received all or substantially all of Prestige 1's assets following the dissolution of Prestige 1 and the formation of Prestige 2.

77. The assets Prestige 2 received from Prestige 1, and subsequently transferred to Wellcare and/or Luxor, were and remain subject to Amerisource's security interest, notwithstanding the unauthorized and improper filing of the termination statement.

78. Upon information and belief, Prestige 1, Prestige 2, and Wellcare have the same or substantially the same operations.

79. Upon information and belief, Wellcare and Luxor are managed by the same or substantially the same personnel as Prestige 2.

80. Upon information and belief, Wellcare and Luxor are affiliated entities.

81. By operation of law as a result of concepts of successor liability, de factor merger, alter ego or consolidation, Wellcare and Luxor assumed all the obligations of Prestige 1 and Prestige 2.

82. Upon information and belief, Wellcare and/or Luxor have been capitalized or otherwise received the assets of Prestige 1 and Prestige 2, including but not limited to, Prestige 1 and/or 2's prescription files.

83. Upon information and belief, Prestige 1 and/or Prestige 2 was used as an alter ego or instrumentality of Luxor and Wellcare.

84. Upon information and belief, Prestige 1, Prestige 2, Wellcare, and Luxor effectively operated as a mere instrumentality of one another, obtaining Products from Amerisource without advising Amerisource of any change in ownership or any cessation of business of any of them.

85. Upon information and belief, Prestige 1, Prestige 2, Wellcare, and Luxor continued to purchase Products from Amerisource fraudulently, leading Amerisource to believe that it was dealing with Prestige 1 when, in fact, it was sending Products to Prestige 2, Wellcare, and/or Luxor.

Therefore, Prestige 1, Prestige 2, Wellcare, and/or Luxor have committed a fraud or otherwise wronged Amerisource.

86. As a result of the actions of Prestige 1, Prestige 2, Wellcare, and Luxor, Amerisource has suffered an unjust loss, being the non-payment of the Products sent to Prestige, and, without Plaintiff's knowledge, to Wellcare and Luxor, in the amount of $312,661.40, plus interest, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

87. Based on the foregoing, there was a de factor merger or consolidation between Prestige 1, Prestige 2,, Wellcare and/or Luxor, and Prestige 2, Wellcare, and/or Luxor have operated as the alter egos of Prestige 1, as a result of which Prestige 2, Wellcare and Luxor are liable for all of Prestige 1's debts to Amerisource.

88. It would be patently unjust to permit Prestige 2, Luxor, and Wellcare to avoid the obligations owed to Amerisource under the Agreements and applicable law.

89. Accordingly, Amerisource respectfully requests that the Court exercise its equitable powers to determine that Prestige 2, Luxor, and Wellcare are liable for the debt to Amerisource as a result of successor liability, defacto merger, alter ego or consolidation.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation respectfully requests judgment in its favor and against Prestige Specialty Pharmacy LLC, Luxor Pharmacy, Inc., and Wellcare Pharmacy, jointly and severally, in the amount of $312,661.40, plus interest, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

## COUNT VIII - PIERCING THE CORPORATE VEIL
### (Amerisource v. Wellcare, Luxor, Sharafeldin, and Cyprus)

90. Amerisource hereby incorporates all of the previous allegations as though fully set forth herein.

91. Upon information and belief, Prestige 1, Prestige 2, Wellcore, and Luxor effectively operated as a mere instrumentality of the other, obtaining Products from Amerisource without advising Amerisource of any change in ownership or any cessation of business of any of them.

92. Upon information and belief, Prestige 1, Prestige 2, Wellcare, and Luxor continued to purchase Products from Amerisource fraudulently, leading Amerisource to believe that it was dealing with Prestige 1 when, in fact, it was sending product to Prestige 2, Wellcare, and/or Luxor. Therefore, Prestige 1, Prestige 2, Wellcare, and/or Luxor have committed a fraud or otherwise wronged Amerisource.

93. Upon information and belief, Sharafeldin transferred the assets of Prestige 1 to Prestige 2, Cyprus, Wellcare, and/or Luxor, for less than fair consideration, for his own personal benefit, and without regard to the liabilities of Prestige 1 to Amerisource.

94. As a result of Sharafeldin's actions, Amerisource was directly harmed, by Prestige's failure to pay the amounts due.

95. Upon information and belief, Cyprus, at all times relevant to this matter, used the assets of Prestige 1, Prestige 2, Wellcare, and/or Luxor for his own personal benefit, and without regard to the liabilities of Prestige 1, Prestige 2, Wellcare, and/or Luxor to Amerisource.

96. As a result of the actions of Prestige 1, Prestige 2, Wellcare, Luxor, Sharafeldin, and/or Cyprus, Amerisource has suffered an unjust loss, being the non-payment of the Products sent to Prestige, and, without Plaintiff's knowledge, to Wellcare and Luxor, in the amount of

$312,661.40, plus interest, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024..

97. Amerisource requests that the Court exercise its equitable powers to pierce the corporate veil and hold Luxor, Wellcare, Sharafeldin and Cyprus liable, jointly and severally, for the acts and omissions of Prestige 1 and Prestige 2 for the following reasons:

    a. Upon information and belief, and pursuant to Sharafeldin and Cyprus' actions, Prestige 2, Luxor and Wellcare share the same or substantially the same management and control;

    b. Prestige 2 and Luxor share the same ownership;

    c. Upon information and belief, the assets of Prestige 1 and Prestige 2—including their prescription files—capitalized, in whole or in part, Wellcare and/or Luxor to the detriment of Prestige's creditors, including Amerisource.

98. Upon information and belief, Sharafeldin and/or Cyprus operated Prestige 1 and Prestige 2 as an alter ego or instrumentality of Luxor and Wellcare, with the intent to avoid payment to Amerisource.

99. It would be patently unjust to permit Luxor and Wellcare to avoid the obligations owed to Amerisource under the Agreements and applicable law.

100. Amerisource requests that the Court exercise its equitable powers to pierce the corporate veil and hold Luxor, Wellcare, Sharafeldin and Cyprus liable, jointly and severally, for the acts and omissions of Prestige 1 and Prestige 2 for the following reasons:

    a. Upon information and belief, Prestige 1, Prestige 2, Luxor and Wellcare share the same or substantially the same management and control;

    b. Prestige 2 and Luxor share the same ownership;

   c. Upon information and belief, Sharafeldin and Cyprus have personally benefitted from the receipt and sale of the Products, without payment to Amerisource for same.

101. Accordingly, Amerisource respectfully requests that the Court exercise its equitable powers to pierce the corporate veil, as Prestige 1, Prestige 2, Luxor, and Wellcare have conducted business in such a way, intentionally or negligently and/or without regard to corporate formalities, as to hinder potential creditors like Amerisource.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation respectfully requests judgment in its favor and against Amro Sharafeldin, Paul Cyprus, Prestige Specialty Pharmacy LLC, Luxor Pharmacy, Inc., and Wellcare Pharmacy, jointly and severally, in the amount of $312,661.40, plus interest, attorneys' fees and costs, and additional late fees that continue to accrue at the daily rate of $134.67 from and after July 26, 2024.

       Respectfully submitted,

       MADDIN, HAUSER, ROTH & HELLER, P.C.

       By: */s/ Julie Beth Teicher*
         Julie Beth Teicher (P34300)
         Counsel for Plaintiff
         One Towne Square, Fifth Floor
         Southfield, MI  48076
         (248) 354-4030
         jteicher@maddinhauser.com

DATED:  August 28, 2024